**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **BRUNO A. TERNON, derivatively on behalf** ) | |
| **of CHELSEA NIGHTCLUB OF TAMPA, INC.,** ) | |
| **a Florida Corporation** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **NICOLETTE DEFILIPPI a/k/a NICOLETTE** ) | **CIVIL ACTION NO.** |
| **R. TERNON, an individual,** ) | |
| ) | |
| **Defendant** ) | |
| **v.** ) | |
| ) | |
| **and CHELSEA NIGHTCLUB OF TAMPA, INC.,** ) | |
| **a Florida Corporation** ) | |
| ) | |
| **Nominal Defendant**. ) | |
| ) | |
| _____ / | |

**VERIFIED COMPLAINT**

COMES NOW, BRUNO A. TERNON ("TERNON"), an individual, derivatively on behalf of

CHELSEA NIGHTCLUB OF TAMPA, INC, a Florida Corporation ("CHELSEA") and sues Defendant,

NICOLETTE DEFILIPPI a/k/a NICOLETTE R. TERNON, an individual (hereinafter "DEFILIPPI") and

Nominal Defendant, CHELSEA, and files this Complaint and states as follows in support thereof:

**STATEMENT OF CASE**

This case involves the theft and improper distribution of corporate funds by the President

of the company to her own personal bank account.

## GENERAL ALLEGATIONS

1. TERNON is an individual residing in King County, Washington and is a citizen of the State of Washington.

2. CHELSEA is an inactive and dissolved Florida corporation with its principal place of business located in Hillsborough County, Florida at 1502 N. Florida Avenue in Tampa, Florida.

3. DEFILIPPI is an individual residing in Knox county, Tennessee and is a citizen State of Tennessee.

4. This is a complaint for damages greater than $75,000, exclusive of attorney's fees, costs and interest.

5. Jurisdiction is proper in this Court pursuant to 28 USC § 1332(a)(1) because the claimed damages, exclusive of interest and costs, exceed $75,000 and the matter is between citizens of different States.

6. Venue is proper in this Court pursuant to 28 USCA § 1391(b)(2) because a substantial portion of the events or omissions giving rise to this claim occurred within Hillsborough County, Florida and pursuant to 28 USCA § 1391(c)(2) because CHELSEA had its principal place of business within Hillsborough County, Florida and the court has personal jurisdiction over it.

7. This is a derivative action brought under the laws of the State of Florida and pursuant to Florida Statute 607, commonly known as the Florida Business Corporations Act.

8. TERNON was a shareholder of CHELSEA at all pertinent times.

9.  Any pre-suit demand required by Fla. Stat. § 607.07401(2) for an investigation of the actions alleged herein would be futile and obviously unavailing because (a) CHELSEA does not have and has never had a board of directors and (b) the actions complained of are the actions of DEFILIPPI, who failed to correct the improper actions after receiving notification of them on or about December 17, 2012 and (c) there is no independent director.

## SPECIFIC ALLEGATIONS

10. TERNON and DEFILIPPI were a married couple whose divorce was finalized in or around January 15, 2008 by virtue of a binding divorce settlement entered in Rechtbank, Amsterdam, a copy of which is attached hereto as Exhibit "A" ("Divorce Settlement").

11. After the Divorce Settlement, TERNON lived and worked in Amsterdam and DEFILIPPI relocated to Tampa, Florida to be closer to their adult children, who lived in the United States.   TERNON and DEFILIPPI temporarily reconciled after the Divorce Settlement, despite the fact that TERNON lived in Europe and DEFILIPPI lived in the United States.

12. TERNON and DEFILIPPI decided to start a nightclub business in Tampa, Florida ("CHELSEA").  TERNON and DEFILIPPI incorporated CHELSEA on or around June 4, 2009. A true and correct copy of the Articles of Incorporation is attached hereto as Exhibit "B".

13. Each of TERNON and DEFILIPPI held a 50% equity ownership interest in CHELSEA at all times from the time it was formed and agreed to an equal split of all proceeds, distributions and profits from the CHELSEA business.

14.  DEFILIPPI was the President of CHELSEA and ran all the day-to-day operations of CHELSEA, including operations, management, finances and other aspects.

15. TERNON was the Vice President of CHELSEA and acted solely as an investor and did not participate in the day-to-day operations, management or finances of CHELSEA.

16. On or around June 10, 2009, DEFILIPPI opened CHELSEA's two business (2) bank accounts at BB&T Bank under BB&T Account Number 1100000145422 ("Business Checking Account") and BB&T Account Number 1100000145430 ("Business Savings Account").

17. Throughout its existence, TERNON invested approximately $841,176.12 in CHELSEA. TERNON's regular method of investing money in CHELSEA was by wiring money from his personal accounts in Netherlands to DEFILIPPI's BB&T Personal Checking Account Number 0000147589603.

18. DEFILIPPI invested approximately $20,000 in CHELSEA.

19. CHELSEA did not stay in business under DEFILIPPI's management and eventually it was dissolved.  DEFILIPPI oversaw and managed the dissolution of CHELSEA.

20. Upon information and belief, DEFILIPPI opened a new personal checking account and a personal savings account at Bank of America on or about November 13, 2012 ("BOA Accounts").

21. As one of the final steps in the dissolution of CHELSEA, CHELSEA sold its liquor license and inventory and netted proceeds of seventy thousand ninety-seven dollars and fifty-two cents ($70,097.52).

22. On or about December 17, 2012, DEFILIPPI caused CHELSEA to distribute seventy-thousand dollars ($70,000) from CHELSEA's Business Checking Account to DEFILIPPI's personal BOA Account.

23. All proceeds from the dissolution of CHELSEA should have been distributed 50% to each of DEFILIPPI and TERNON.

24. On or about December 17, 2012, TERNON noticed the irregularity in the distributions of CHELSEA and inquired of DEFILIPPI as to why DEFILIPPI caused CHELSEA to distribute $70,000 directly from CHELSEA to DEFILIPPI.  A copy of TERNON's December 17, 2012 e-mail is attached hereto as Exhibit "C".

25. On or about September 27, 2013, CHELSEA was administratively dissolved.

26. DEFILIPPI did not respond directly to TERNON's December 17, 2012 e-mail until October 6, 2013 at which time she stated that, among other things "I took the extra $35,000 from our joint account from the sale of Chelsea because I knew you would never repay the money that you stole from me."   DEFILIPPI went on to cite multiple personal reasons to attempt to justify her improper distribution of the $35,000 from CHELSEA to herself in her e-mail of October 6, 2013 such as "…your income *far exceeds my income and w*hat you "believe" is of no significance…." (emphasis in original) and that [DEFILIPPI] "…could have grown [her] career…" and "as your wife I followed you…." A copy of the October 6, 2013 e-mail from DEFILIPPI is attached hereto as Exhibit "D".

27. DEFILIPPI also told TERNON in later conversations that she took the additional $35,000 because TERNON "makes more money than her and will not miss $35,000", that TERNON's "parents are rich, so that he has nothing to worry about" and that DEFILIPPI has nothing.

28. DEFILIPPI also cited numerous claims in her October 6, 2013 e-mail regarding TERNON's alimony payments, infidelity and other personal issues and threatened to "return to

court" over these issues.  DEFILIPPI eventually did sue TERNON over alimony payments and such issues have been fully resolved by the Court; however, DEFILIPPI's improper distribution of funds from CHELSEA to herself was not the subject of said litigation and has not been resolved by any court.

29. CHELSEA owes TERNON at least $35,000 as a result of DEFILIPPI's actions.

30. Plaintiff has been required to hire the undersigned counsel and pay them a reasonable fee and incur costs as a result of Defendant's failures and refusals to pay Plaintiff the amounts owed.

31. All conditions precedent to this action have occurred or been waived.

**CAUSES OF ACTION**

**I.**      **COUNT I: REQUEST FOR DECLARATORY RELIEF PURSUANT TO FLA. STAT. 86**

32. Plaintiff re-states and re-avers paragraphs 1-31 as if fully alleged herein.

33. A bona fide, actual, present practical need for a declaration exists.

34. The declaration concerns a present, ascertainable state of facts or present controversy as to a state of facts.

35. A privilege, right or power of the Plaintiff is dependent upon the facts or the law applicable to the facts.

36. A person or persons have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

37. The antagonistic and adverse interests are all before the Court by proper process.

38. The relief sought is not merely the giving of legal advice or the answer to questions propounded for curiosity.

Wherefore, Plaintiff requests that this Court enter an Order of declaratory relief against Defendants determining the following issues, as well as any supplemental and incidental relief that is fair and just under the circumstances, such as damages, pre- and post-judgment interest, costs and attorney's fees and the following specific matters:

a. That DEFILIPPI improperly caused CHELSEA to distribute $70,000 to DEFILIPPI; and,

b. Finding that TERNON was and is entitled to fifty percent (50%) of all distributions of CHELSEA, including distributions made upon dissolution of CHELSEA, including 50% of the seventy thousand dollars that DEFILIPPI distributed to herself from CHELSEA and advising CHELSEA as to the proper distribution of any funds recovered as a result of this Action; and,

c. Finding that DEFILIPPI is not entitled to receive any funds recovered by CHELSEA as a result of this action because DEFILIPPI has unclean hands and should not be permitted to recover from her own wrongdoing; and,

d. That CHELSEA is entitled to a recovery of any and all damages from DEFILIPPI, including interest, costs and attorney's fees incurred pursuant to Fla. Stat. § 607.07401 or any other applicable rule or statute.

## II.      COUNT TWO: BREACH OF FIDUCIARY DUTY

39. The Plaintiff re-states and re-avers Count 1- 31 as f fully stated herein.

40. DEFILIPPI and CHELSEA share a relationship whereby CHELSEA reposed trust and confidence in DEFILIPPI to manage and protect CHELSEA's finances.

41. CHELSEA undertook such trust and assumed a duty to advise, counsel or protect CHELSEA from harm as its President.  DEFILIPPI owed CHELSEA a fiduciary duty.

42. DEFILIPPI, as an officer and President of CHELSEA, owed CHELSEA a fiduciary duty.

43. DEFILIPPI breached her fiduciary duty to CHELSEA by mismanaging CHELSEA's funds, causing CHELSEA to distribute funds in dissolution improperly to herself rather than to CHELSEA's shareholders as required and otherwise self-dealing, mismanaging or embezzling CHELSEA's funds.

44. DEFILIPPI's breach of fiduciary duty has caused damages to CHELSEA.

WHEREFORE, Plaintiff prays that this Court will enter an Order for damages against Defendant, including costs, pre- and post-judgment interest and attorney's fees (under Fla. Stat. § 607.07401 or any other law, rule or basis for awarding attorney's fees) and any and all other relief that is fair, just and equitable.

### III.       COUNT THREE: CONVERSION

45. The Plaintiff re-states and re-avers paragraphs 1-31 as if fully alleged herein.

46. DEFILIPPI committed an unauthorized act by distributing funds of CHELSEA to herself.

47. DEFILIPPI's actions deprived CHELSEA of its property permanently or for an indefinite time.

48. The deprivation of CHELSEA's funds is inconsistent with Plaintiff's ownership interest in the property.

49. The converted funds are capable of specific identification.

50. Plaintiff has previously made demand for return of the converted funds.

51. CHELSEA has suffered damages.

WHEREFORE, Plaintiff prays that this Court will enter an Order for damages against Defendant, including costs, pre- and post-judgment interest and attorney's fees (under Fla. Stat.

§ 607.07401 or any other law, rule or basis for awarding attorney's fees) and any and all other relief that is fair, just and equitable.

## IV.       COUNT FOUR: CIVIL THEFT IN VIOLATION OF FLA. STAT. § 772.11

52. The Plaintiff re-states and re-avers paragraphs 1-31 as if fully alleged herein.

53. CHELSEA has been injured by DEFILIPPI's actions.

54. DEFILIPPI's actions were in violation of Fla. Stat. § 812.014 because DEFILIPPI knowingly obtained, used or endeavored to obtain or use the property of CHELSEA with the intent to either temporarily or permanently deprive CHELSEA of its right to the property or benefit from the property or to appropriate the property to her own use or the use of someone not entitled to the use of the property.

55. CHELSEA is entitled to three times the actual damages sustained as well as its attorney's fees and court costs in trial and appellate courts pursuant to Fla. Stat. § 772.11.

56. Before filing this action, CHELSEA made a written demand to DEFILIPPI for recovery of the stolen property, a true and correct copy of which is attached hereto as Exhibit "D".

57. DEFILIPPI did not comply with CHELSEA's demand within thirty (30) days of receipt of the demand.

WHEREFORE, Plaintiff prays that this Court will enter an Order for damages against Defendant, including costs, pre- and post-judgment interest and attorney's fees (under Fla. Stat. § 607.07401 Fla. Stat. § 772.11, Fla. Stat. § 772.185 or any other law, rule or basis for awarding attorney's fees) and any and all other relief that is fair, just and equitable.

## V. VERIFICATION

I, Bruno Ternon, have read the foregoing Verified Complaint and certify that it is true and correct.

_____

Bruno Ternon

STATE OF WASHINGTON
COUNTY OF KING

BEFORE ME, the undersigned personally appeared BRUNO TERNON, Plaintiff in the above-styled cause (__) who is personally known to me, or (✓) who produced Washington Driver Licence as identification, who executed the foregoing and states under penalties of perjury that he declares he has read the foregoing and that the facts stated therein are true and correct.

WITNESS my hand and seal this **30th** day of November, 2016

> Notary Public
> State of Washington
> RAVY BO
> MY COMMISSION EXPIRES
> June 10, 2019

_____

Notary Public
My commission expires: June 10th, 2019

Respectfully Submitted this 6th day of December, 2016.

By:              /s/ Kevin G. Brick
_____

Kevin G. Brick
Florida Bar No. 0011500
Brick Business Law, P.A.
400 N. Ashley Drive #2600
Tampa, Florida 33602
Telephone: (813) 816-1816
Facsimile: (813) 200-1032
Kevin.Brick@BrickBusinessLaw.com
Attorneys for Plaintiff



## DIVORCE SETTLEMENT

*The undersigned*

Ms Nicolette Rene Ternon, born in Iowa, United States on 14 January 1959, residing in (1012 GR) Amsterdam on Heintje Hoeksteeg 5G, hereinafter "the wife",

and

Mr Bruno Claude Ternon, born in La Havre, France on 4 April 1954, residing in (1012 HL) Amsterdam on Pieter Jacobszstraat 8E, hereinafter "the husband",

Take into consideration the following:

- Parties were married to each other on 26 July 1986 in Santa Clara, California. No prenuptial agreement was drawn up for the marriage;

- the wife has American nationality, the husband American and French;

- From their marriage the following children were born:
  Christopher Ian Ternon, born on 3 September 1981 (adopted by the husband in December 1986);
  Ashley Nicole Ternon, born on 24 February 1987.

- Parties have been living in the Netherlands since 13 December 2001;

- Parties actually separated on 8 July 2005. Since then, parties each own and reside in their own home. The residence on Heintje Hoeksteeg 5G in Amsterdam is occupied by the wife, the residence on Pieter Jacobszstraat 8E by the husband;

1

Exhibit "A"

- Both parties consider that their marriage has broken down irretrievably and they propose to dissolve their marriage by divorce on this ground;

- Parties have provided for the consequences of the dissolution of their marriage in the event that divorce takes place.

State to agree as follows:

Article 1      The procedure

1.1 Parties shall make every effort to bring the case before the court in the short term by submitting a joint request for divorce.

1.2 The costs incurred due to the divorce procedure will be for the account of the husband.

*ALIMONY*

Article 2      Alimony wife

2.1 Parties acknowledge that the wife has a limited own income which is not sufficient to meet her own living expenses.

2.2 Parties agree that, from the date that the petition for divorce is submitted, the husband shall pay alimony to the wife of € 2.800,= gross per month, as a contribution to the costs of her living expenses, to be paid in advance before the first day of the month. This amount shall be reduced to € 1.800,= gross per month as soon as the current mortgage on Heintje Hoeksteeg 5G (Hyp. Nr. C090-473191) is fully repaid.

2.3 The amount mentioned in clause 2.2. can only be increased or decreased if the husband's gross monthly income increases or decreases by more than 25% in the past 12 months. In this instance, the percentage of increase or decrease in alimony will match the percentage of increase or decrease in the husband's gross monthly income.

2.4 Partner's alimony shall not be subjected to the legally determined index, as intended in Article 1:402A Dutch Civil Code.

2

*DIVISION OF PROPERTY*

**Article 3        Extent of the community property and date of reference**

3.1. As date of reference for determining the extent of the parties' community property, and for the valuation of the community property, the date which the parties actually separated will be used, namely 8 July 2005.

**Article 4        Allocation**

4.1 To the wife the following assets and liabilities will be allocated:
-   the residence on Heintje Hoeksteeg 5G in Amsterdam;
-   all assets which she has in her possession at the time this settlement is signed.

4.2 To the husband all the remaining assets and liabilities will be allocated, including:
-   the residence on Pieter Jacobszstraat 8E in Amsterdam;
-   all assets which he has in his possession at the time this settlement is signed.

4.3 Parties shall ensure that the allocation takes place no later than one month after the divorce decree has been recorded in the civil registers. If necessary, and in as far as this is requested, they will co-operate with delivering assets which have been allocated to one, but are in the possession of the other.

4.4 The wife indemnifies the husband from all liability, individual or otherwise, which partly rest with him on the grounds of obligations from the mortgage loan in respect of the residence on Heintje Hoeksteeg 5G in Amsterdam and she indemnifies the husband if required from all claims or demands.

4.5 The husband indemnifies that the wife from all liability, individual or otherwise, which partly rest with her on the grounds of the obligations from the mortgage loan in respect of the residence on Pieter Jacobszstraat 8E in Amsterdam and he indemnifies the wife if required from all claims or demands.

4.6 Parties find that by the division of the community property between the Parties as is agreed, there is no case of under or over allocation.

4.7 All benefits and burdens arising after the date of reference for determining the extent of the community property of the marriage as intended in Article 3.1 are allocated to, or are for the account of, the one whom they concern.

4.8 Parties grant each other a full discharge and acquittal.

3



**Article 5  Law Equalization of Pension Rights with divorce**

5.1 Parties have agreed not to divide their pension rights in accordance with, and in consideration of, the Law Equalization of Pension Rights with divorce (Law PV).

**Article 6        Final Stipulation**

6.1 Parties hereby declare that they have divided the common goods existing between them from their marriage with consideration of the criteria of reasonability and fairness and they state that, whilst preserving the rights and obligations stated in this settlement, they have no claims on each other and grant each other a complete discharge.

6.2 The wife indemnifies the husband and the husband indemnifies the wife for claims in respect of debts which they respectively by this agreement take for their own account.

6.3 Parties commit themselves to this agreement which shall be neither fully nor partly dissolved on grounds of any shortcoming in the fulfilment of it. Compliance shall be able to take place, albeit with compensation.

Thus agreed and drawn up in triplicate and signed

Amsterdam                                    Amsterdam

Date: 27 December 2007                    Date: 15 January '08

N.R. Ternon                                  B.C. Ternon

This case is handled (nr. 71000) by mr L. Jellinghaus van Van Rossem Advocaten, Reguliersdwarsstraat 90-92, 1017 BN Amsterdam, telephone: (020) 531 2004 , fax: (020) 531 20 09, e-mail: jellinghaus@vanrossem.nl

Voor fotocopie conform aan
het origineel
De Griffier van de
Rechtbank te Amsterdam

4

AGREEMENT DETERMINING THE LEGAL RELATIONSHIP
BETWEEN THE PARTIES

*The undersigned*

Ms Nicolette Rene Ternon, born in Iowa, United States on 14 January 1959, residing in (1012 GR) Amsterdam on Heintje Hoeksteeg 5G, hereinafter "the wife",

and

Mr Bruno Claude Ternon, born in Le Havre, France on 4 April 1954, residing in (1012 HL) Amsterdam on Pieter Jacobszstraat 8E, hereinafter "the husband",

Take into consideration the following:

- Parties were married to each other on 26 July 1986 in Santa Clara, California. Prior to the marriage no prenuptial agreement was drawn up;

- The wife has American nationality, the husband American and French;

- Parties have been living in the Netherlands since 13 December 2001;

- Parties actually separated on 8 July 2005. On that date the wife moved into a property located at Heintje Hoeksteeg 5G in Amsterdam, that both parties purchased together. Since the separation of the parties the husband has lived in the marital home on Pieter Jacobszstraat 8E.

- Parties intend to submit a joint request to dissolve the marriage;

- Parties have reached agreement in respect of the consequences of the dissolution of the marriage. The agreement which has been made is recorded in a divorce settlement, which will be attached to the joint request for a divorce,

- Supplementary to the divorce agreement, the parties have agreed the following:

1

**Article 1        Debts**

1.1 The debts with the Tax Office amount to € 237,000.=. These debts are in respect of overdue claims / tax demands from the Tax Office for the year 2004 (€ 80.800,=), 2005 (€ 81.000,=) and 2006 (€ 75.200,=).

1.2 Aforementioned debts shall be allocated to the husband.

1.3 The husband ensures that the wife is indemnified from all liability, individual or otherwise, which may partly lie with her from the obligations arising from the above mentioned debt and he indemnifies the wife if required from all liability or claim.

**Article 2        Trust Agreement**

2.1 Also after the dissolution of the marriage the terms regarding the Trust agreements of the parties will remain valid. The wife remains beneficiary of the husband, the husband remains beneficiary of the wife.

**Article 3        Residence**

3.1 The residence on Heintje Hoeksteeg 5G shall be allocated to the wife, the residence on Pieter Jacobzstraat 8E to the husband. The fiscal benefit goes to the owner of the different properties, in the sense that both parties can enjoy the mortgage interest relief in respect of their own home if applicable.

3.2 If the husband sells the residence on Pieter Jacobzstraat 8E, he shall pay half of the net proceeds of that sale to the wife.

**Article 4        Savings**

4.1 At the time of the marriage parties had built up joint savings to a value of € 78,000.=. This capital was used by the husband in 2004 for the purpose of investing in stocks and shares. The entire amount was lost as a result of a too risky investment.

4.2 If the total savings had not been lost by the husband's activity, the wife would have had a claim on an amount of € 39,000.=. This amount shall be paid back by the husband to the wife in monthly instalments. The first instalment shall be made after the tax debts mentioned in Article 1 have been completely paid off by the husband. The husband shall pay € 2.000,= per month until the day that the claim is paid entirely.

2

**Article 5     Spousal alimony**

5.1 The husband shall pay alimony to the wife of € 2.800,= gross per month as a contribution to the costs of her living expenses. This amount shall be reduced to € 1.800,= gross per month as soon as the mortgage on Heintje Hoeksteeg 5G (Hyp.Nr. C090-473191) is fully repaid.

5.2 The obligation to pay spousal alimony will only come to an end with the decease of one of the parties.

**Article 6     Medical insurance costs**

6.1 As of January 1st 2008 the wife shall pay the costs for her medical insurance herself.

**Article 7     Final Stipulation**

7.1 Parties declare that after implementation of this settlement that they have no claims on each other and that they grant each other complete discharge.

7.2 Parties exclude every possibility of dissolving this agreement.

7.3 This settlement is drawn up in triplicate and signed.

Amsterdam,                          Amsterdam,
Date: 27 December 2007              Date: 15 January '08

N.R. Ternon                         B.C. Ternon

This case is handled (nr. 71000) by mr L. Jellinghaus van Van Rossem Advocaten, Reguliersdwarsstraat 90-92, 1017 BN Amsterdam, telephone: (020) 531 2004 , fax: (020) 531 20 09, e-mail: jellinghaus@vanrossem.nl

# VINK & PARTNERS

ADVOCATEN BELASTINGADVISEURS NOTARIS

ADDENDUM

to the Divorce Settlement of 12 March 2008 Amsterdam District Court

parties;

Mrs. *Nicolette Rene Ternon*, born in Iowa, USA on 14 January 1959,

en

Mr. *Bruno Claude Ternon*, born in Le Havre, France on 4 april 1954

considering;

- the content of the divorce settlement of 12 March 2008 between parties which includes an alimony arrangement in Article 2 of the settlement whereby the husband agrees to pay the wife a monthly alimony.

- wish to include a stipulation regarding the alimony in case of death of parties or the remarrying of the wife, in such a way that the alimony obligations will cease to exist in case of death of parties or remarrying of the wife.

- that such stipulation is not in contradiction with the divorce settlement of March 12, 2008, nor with what parties have intended to agree at the time of the settlement.

- wish the stipulation and this addendum to be legally bounding as of the 12th of March 2008.

state and agree as follows;

*Alimony payments as agreed in Article 2 of the divorce settlement of March 12, 2008 shall not be required after death of wife or husband or in the event of wife should remarry, effective as of 12 March 2008.*

TAMPA, FLORIDA ..........................(place)

DECEMBER 2, 2010 ...............(date)

Nicolette Rene Ternon

AMSTERDAM,
THE NETHERLANDS ..........................(place)

NOVEMBER 26th, 2010 .............................. (date)

Bruno Claude Ternon

# Electronic Articles of Incorporation
# For

P09000048885
FILED
June 04, 2009
Sec. Of State
wcunningham

CHELSEA NIGHTCLUB OF TAMPA, INC.

The undersigned incorporator, for the purpose of forming a Florida
profit corporation, hereby adopts the following Articles of Incorporation:

## Article I
The name of the corporation is:
> CHELSEA NIGHTCLUB OF TAMPA, INC.

## Article II
The principal place of business address:
> 1502 N. FLORIDA AVE.
> TAMPA, FL. US 33602

The mailing address of the corporation is:
> 1502 N. FLORIDA AVE.
> TAMPA, FL. US 33602

## Article III
The purpose for which this corporation is organized is:
> ANY AND ALL LAWFUL BUSINESS.

## Article IV
The number of shares the corporation is authorized to issue is:
> 100

## Article V
The name and Florida street address of the registered agent is:
> NICOLETTE R TERNON
> 1502 N. FLORIDA AVE.
> TAMPA, FL.   33602

Exhibit "B"

I certify that I am familiar with and accept the responsibilities of registered agent.

P09000048885
FILED
June 04, 2009
Sec. Of State
wcunningham

Registered Agent Signature:   NICOLETTE R. TERNON

## Article VI

The name and address of the incorporator is:

BRUNO C. TERNON
1502 N. FLORIDA AVE.

TAMPA, FL. 33602

Incorporator Signature:   BRUNO C. TERNON

## Article VII

The initial officer(s) and/or director(s) of the corporation is/are:

Title:  P
NICOLETTE R TERNON
1502 N. FLORIDA AVE.
TAMPA, FL.  33602

Title:  VP
BRUNO C TERNON
1502 N. FLORIDA AVE.
TAMPA, FL.  33602

## Article VIII

The effective date for this corporation shall be:

06/10/2009

Print                                                                                                                    Close

## Inquiry

From:  **Bruno Ternon** (bternon@hotmail.com)
Sent:  Mon 12/17/12 9:53 AM
To:    Nikki Ternon (ternon@hotmail.com)

Any reason why you withdrew $70,000 for the Business Account? Thanks!

Exhibit "C"

Print                                                                                    Close

From: ternon@hotmail.com
To: bternon@hotmail.com
Subject: RE: Food for thought RESPONSE
Date: Sun, 6 Oct 2013 22:52:15 -0400

Bruno,

Your selective memory is getting the better of you; you have forgotten a lot of details related to our indeed sad and often very painful history, most significantly that I ran the Chelsea business alone for 3.5 years while you could have chosen to be there. You let your greed for money cloud that decision, and I paid the price with my health. Saying I enjoyed the house is far from the truth given the number of hours I worked to keep it going in your absence. However, this doesn't relate to our legal agreement in any way.

You also forget that it was your greed that enabled you to steal money that was half mine, as well as steal money that was mine alone from my bank account by forging my name. Luckily, this is all noted in our divorce decree and I have proof to substantiate the forgery as well as the legal agreement as truth. I took the extra $35,000 from our joint account from the sale of the Chelsea because I knew you would never repay the money that you stole from me. I did nothing illegal as it was a joint account, and you agreed to repay it in the divorce. Your actions were morally and financially wrong, yet you make no mention of those facts. I simply took what was mine.

There is also the fact that I could have grown my career -- I had good jobs and decent opportunities but my career came second to yours so our children wouldn't be neglected. As your wife I followed you, and in doing so it allowed your career to grow and mine to fizzle. One parent had to be home to raise the children, and I raised our children as well as yours, yet you have discounted that, as well. You said, *"We both have decent jobs, and I don't believe that the purpose of spousal support is not to equalize incomes.* Your income *far exceeds my income, and w*hat you "believe" is of no significance. What is significant is that we have a legal agreement and you are required to abide by it -- it is the law.

I have an email that states that you would resume your alimony payments, and pay half of the fees to get our divorce domesticated in the USA. Given you have rarely kept a commitment in all of the years I was involved with you, beginning with your first of many infidelities when I was 8 months pregnant with our daughter, I am hardly surprised that you now are reneging on your commitment to resume alimony payment.

If you want to "re-negotiate" we will return to court and let a judge decide what is fair and equitable; however, in the meantime, you are in arrears of said agreement, and I respectfully request that you send payment immediately.

Nikki

From: bternon@hotmail.com
To: ternon@hotmail.com
Subject: Food for thought
Date: Sat, 5 Oct 2013 17:14:53 +0000

Exhibit "D"

Nikki,

I bought this house in Florida with my own funds and I put your name on the deed in good faith that we would live together again as husband and wife. After enjoying it for more than 3 years and abandoning it, the decent thing was to quit any claims on it, unconditionally.

Circumstances have changed significantly. The apartment in Amsterdam is sold. We both have decent jobs, and I don't believe that the purpose of spousal support is not to equalize incomes. Perhaps, the biggest and saddest change at least from my perspective is to realize that after we agreed to split the proceeds of the sale of our business assets 50/50, you were ready to sacrifice our friendship as well as your relationship with our daughter by short-changing me of $35,000. I think we need to renegotiate.

Bruno

Bruno C. Ternon
Cell: +1 813-802-1394